## BECK ET AL. *v.* BUDD ET AL.

[No. 6,773. Filed June 11, 1909.]

1. TRIAL.— *Instructions.— Contracts.— Misstatement of Considera-tion.*—An instruction, in an action for the breach of a contract, that "the price of the farm fixed in the contract is $6,000, and that the price fixed in the contract for the stock of goods and fixtures is not to exceed $7,000, * * * and if the market value of the goods was less than their first invoice price, that would be no excuse for the defendants to refuse to take the same, * * * nor would it be an excuse for plaintiffs to break their contract, if the land had been worth less than the contract price of $6,500," is not misleading where the contract was read in evidence show-ing the real consideration for the farm to be $6,500. p. 147.

2. TRIAL.— *Instructions.— Contracts.— Breach.— Assumption of Mortgage.*—Where, in a trade of lands valued at $6,500, the same being encumbered by a mortgage for $3,000 which was assumed, for a stock of goods invoiced at not to exceed $7,000, an instruc-tion was given, in an action for the breach of such contract, that "these values [of the farm and stock of goods] the parties them-selves fixed, and they are bound by them," and that the damage for a breach of such contract is the difference, at the date of such contract, "between the market value of the goods and the market value of the land, as shown by the evidence," is not bad because of telling the jury that the price of the farm was fixed at $6,500, where there was no evidence that the mortgage affected the con-tract price. p. 148.

3. TRIAL.— *Instructions.— Contracts.— Sales.— Inspection.—"Rep-resentation."—"Stipulation."*—In an action for the breach of a contract for the sale of a stock of goods, the purchaser reserving the right of inspection and of avoiding the contract in case the goods were not as "represented," an instruction that it was for the jury to determine the purpose of the inspection made, and also whether the stock of goods was as "stipulated for," is not misleading, the words "represented" and "stipulated for" being practically equivalent. p. 148.

4. WORDS AND PHRASES.— *"Stipulation."— "Representation."*—The word "stipulation" imports an agreement, a bargain, a contract; and the word "representation" imports a description, a portrayal, or a setting forth. p. 149.

5. TRIAL.—*Instructions.—Applicability.*—An instruction cannot be held inapplicable to the case, where there was an issue pertinent thereto and some evidence to sustain such issue. p. 150.

VOL. 44—10

From Knox Circuit Court; *Orlando H. Cobb,* Judge.

Action by Samuel C. Budd and others against William Beck and another. From a judgment for plaintiffs, defendants appeal. *Affirmed.*

*Padgett & Padgett* and *Hastings, Allen & Hastings,* for appellants.

*Alvin Padgett, William A. Cullop* and *George W. Shaw,* for appellees.

COMSTOCK, J.—Appellees brought this action against appellants to recover damages for the alleged breach of a written contract. A copy of the contract is made a part of the complaint, as an exhibit.

In the contract appellants agree to exchange a farm in Daviess county, Indiana, for a stock of merchandise belonging to the appellees at Clinton, Indiana. The land was valued at $6,500, and the goods were to be taken at invoice at first cost, the value not to exceed $7,000. The land was to be taken subject to a mortgage of $3,000, appellants to pay the difference between the value of the stock and the value of the land. The exchange was made subject to inspection of stock by appellants. It was provided in the contract that each should furnish the other with abstracts of title within ten days, and that all deeds were to be passed and negotiations to be closed within —— days from date of agreement.

The fifth paragraph of the amended answer presents the points to be considered on this appeal, and the substance of that answer is as follows: That at the time of the drawing and signing of said written contract, and for the purpose of inducing appellants to sign the same, the appellees expressly represented to them that the stock of goods mentioned therein was in good condition, not shelf-worn or soiled, and was worth the full invoice price, with the exception of the shoes contained therein, which, on account of the advance in price of shoes, were then worth more than the invoice price; that said stock of goods was new, and

up to date in style, kind and quality, except not to exceed $50 in value thereof, which was old, shelf-worn and soiled; that at the time of signing said instrument it was expressly agreed and understood between the parties that said instrument should not become binding and effective upon appellants until they should have the privilege and opportunity of examining the stock of goods, and should they find the same not as represented then the instrument should not become effective and binding on them; that for the purpose of making said agreement, and understanding a part of the written agreement, the parties caused the following sentence to be inserted in the written contract: "Exchange made subject to inspection of stock by Beck & Nugent;" that it was mutually agreed and understood that said sentence should have the force and effect to mean that appellants should have the right to inspect the goods, and should the same be found to be not as represented, then the instrument should not be binding; that appellants inspected the goods, and found they were not as represented, for the reason that they were inferior grade, style and quality, and were not in good condition, but were shelf-worn, soiled and out of style and date, and not worth to exceed one-third of the cost price, and that after such examination appellants notified appellees that they would not accept the stock.

The cause was put at issue, there was a trial by jury, and a verdict returned in favor of appellees for $500 damages, on which judgment was rendered.

Appellants rely for reversal upon the giving by the court of instructions two and four, requested by appellees. Said instruction two is as follows: "You are instructed that the price of the farm fixed in the contract is $6,000, and that the price fixed in the contract for the stock of goods and fixtures is not to exceed $7,000. These are prices fixed by the parties themselves by their contract, and are binding on the parties, and if the market value of

.the goods was less than their first invoice price that would be no excuse for the defendants to refuse to take the same, nor would it relieve the defendants from liability in the action, nor would it be an excuse for plaintiffs to break their contract, if the land had been worth less than the contract price of $6,500. These values the parties themselves fixed, and they are bound by them, the measure of damages, if any, being the difference on March 7, 1906, between the market value of the goods and the market value of the land, as shown by the evidence.''

It is claimed in behalf of appellants that this instruction was erroneous, because of a misstatement of evidence. The alleged misstatement is, that the contract price for the land is named at $6,000, when in fact it was $6,500. Both amounts are named in the instruction. The contract was introduced in evidence. The amount fixed therein was $6,500. The facts were all before the jury. The mistake is so manifest that it corrected itself, and could not have misled the jury. *Louisville, etc., R. Co.* v. *Shanks* (1892), 132 Ind. 395.

The land was valued at $6,500, and the stock of goods was taken at invoice at first cost at a value not to exceed $7,000. The land was to be taken subject to a mortgage of $3,000, appellants to pay the difference between the invoice of stock and the value of the land. It is insisted that the jury was told by this instruction that appellants were bound by the contract price of $6,500, irrespective of mortgage. There is no evidence that the fact that the land was subject to that mortgage affected the contract price.

Instruction four reads as follows: ''The right of inspection provided for by the terms of the contract related to the right of the defendants to ascertain whether the stock of goods was such as stipulated for, but not to their .right to accept, or not to accept, the stock, according to their caprice. By that stipulation the defendants had the right of inspection before final acceptance of the goods

or conveyance of the land, and it was the duty of the plaintiffs to afford them all reasonable opportunity to make it; but if such opportunity was given to them, it was the duty of the defendants, if they saw proper, to exercise the right to do so with a view to ascertaining whether the stock of goods was such as stipulated for, and not with a view of avoiding the contract. Evidence has been given concerning inspection, and it is for you to determine from the evidence what inspection was made, together with the purpose of it, and also whether the stock of goods was as stipulated for.''

It is urged that this instruction is erroneous, because it limited appellant's right of inspection of the goods to ascertaining if the stock of goods ''was such as stipulated for;'' that the words ''stipulated'' and ''represented'' are entirely different in meaning.

To stipulate is to make an agreement, to bargain, to contract, to settle terms, etc. *Campbellsville Lumber Co.* v. *Hubbert* (1902), 112 Fed. 718, 50 C. C. A. 435. A 4. stipulation is therefore an agreement as to terms. To represent is to describe or portray, in other words, to declare or set forth. If the goods were stipulated to be in a certain condition, such stipulation was an agreement that they would be in that condition. If appellees had represented the goods to be in a certain condition, the meaning would have been substantially the same as if the appellants had stipulated that they should be in a certain condition. The closing sentence of the instruction—''evidence has been given concerning inspection, and it is for you to determine from the evidence what inspection was made, together with the purpose of it, and also whether the stock of goods was as stipulated for''—must have conveyed to the jury substantially the same idea that would have been conveyed had the expression ''as represented'' been used.

Appellants further contend that instruction four was not applicable to the issue formed by the fifth paragraph of

answer under the evidence. They concede that an issue was raised as to representations. There was evidence to make pertinent the instruction. The undisputed testimony of the witness Hiatt shows that appellant Beck intended to look at the stock of goods with the intention, in advance, of declaring that it was not as represented, because appellant found that they could not, for want of title, convey the land as they had agreed to do. So that if there was technical inaccuracy in the use of the words complained of, appellants were not harmed thereby.

It is earnestly insisted by appellees that the record does not present any question as to the instructions. But, conceding for the purpose of this appeal that these questions are properly raised, we find no error for which judgment should be reversed.

Judgment affirmed.